IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR 16-01137-TUC-JAS (EJM) |
| Plaintiff, ) ) | |
| vs. ) ) | **REPORT AND RECOMMENDATION** |
| Jose Trinidad Aispuro-Medina, ) ) | |
| Defendant. ) ) | |

Pending before the Court are the following motions: (1) a Motion to Dismiss Count One of the Superseding Indictment, which challenges the sufficiency of the allegations in that count; (2) a Motion to Dismiss the Superseding Indictment for Vindictive Prosecution; and (3) a Motion to Preclude Expert Testimony. For the reasons stated below, the Court recommends that the District Court deny each of these motions.

**FACTUAL BACKGROUND**

On May 17, 2016, the defendant was charged in a criminal complaint with Conspiracy with the Intent to Distribute Marijuana in violation of 21 U.S.C. § 846. [Doc. 1.] The criminal complaint alleges that from a time unknown to on or about May 15, 2016, at or near San Simon, Arizona (on the Tohono O'Odham Indian Reservation), the defendant was part of a marijuana smuggling conspiracy. The defendant was allegedly serving as a "scout" or "lookout" for law enforcement to assist individuals who were transporting marijuana from Mexico into the United States. When the agents first encountered the defendant, he was located on a hilltop, looking through binoculars, and talking on a handheld

radio. When agents approached the defendant, he dropped the binoculars and radio and unsuccessfully attempted to flee. When agents responded to the area near where the defendant was first encountered, they found solar panels, cellular phones, phone chargers, radio batteries, and other pairs of binoculars.

On June 8, 2016, a federal grand jury in Tucson, Arizona, returned an Indictment against the defendant charging him with Conspiracy with the Intent to Distribute Marijuana in violation of 21 U.S.C. § 846. [Doc. 7.] After receiving the government's disclosure and a plea agreement, in a letter dated June 27, 2016, defense counsel advised the Assistant U.S. Attorney that his client was rejecting the plea offer and was planning on going to trial. (9/21/16 Tr. at 5.)[1] On July 20, 2016, a federal grand jury in Tucson, Arizona, returned a Superseding Indictment which added the felony offense of Illegal Re-entry of a Removed Alien in violation of 8 U.S.C. § 1326 (Count Two). [Doc. 14.]

A.   Motion to Dismiss Count One

On August 18, 2016, the defendant filed a Motion to Dismiss Count One of the Indictment (the conspiracy count), arguing that this count failed to sufficiently allege that offense. [Doc. 17.] Specifically, the defendant alleged that Count One failed to sufficiently allege: (1) the beginning date of the alleged conspiracy; (2) any facts constituting the essential elements of the conspiracy charge, including the co-conspirators and overt acts of the defendant or co-conspirators; and (3) the quantity of marijuana involved in the alleged conspiracy. [Doc. 17 at 6; Doc. 24 at 3.]

The government's response is that Count One is sufficiently charged because it alleges all that is legally required. Specifically, the government argues that it need not allege overt acts or specific co-conspirators under 21 U.S.C. § 846, and that the allegations of Count One -- which track the language of 21 U.S.C. § 846, identify a location of the offense and co-

---

[1] Citations to "9/21/16 Tr." followed by a page number are to the transcript of the oral argument on the pending motions.

- 2 -

conspirators generally, and allege a purpose of the conspiracy -- are sufficient to withstand a motion to dismiss. [Doc. 21 at 2-3.]

B.	Motion to Dismiss for Vindictive Prosecution

On August 30, 2016, the defendant filed a Motion to Dismiss the Superseding Indictment for Vindictive Prosecution. [Doc. 22.] The defendant claims that the Superseding Indictment was based solely on his exercise of his constitutional right to go to trial, and for that reason, it was vindictive and due process requires the dismissal of the Superseding Indictment. In support of that motion, the defendant argues that the government knew from the inception that he was in the United States illegally and no further investigation was required to include this charge in the original Indictment. [Doc. 22 at 7.] However, the government only added this illegal re-entry charge (which was based on the same facts as the drug offense) after he rejected the government's plea agreement and decided to exercise his right to trial. [Doc. 22 at 7-8.]

The government's response is, essentially, that in the pre-trial setting (almost) anything goes in terms of the discretion afforded to the government to add charges. The government points out that this is not a case where the government brought additional charges after the defendant had exercised a legal right (*e.g.*, after a hung jury or mistrial, after the defendant testified at the prior trial, or where the trial is on appeal or was reversed on appeal). In fact, the Superseding Indictment could not have been motivated by the defendant's Motion to Dismiss Count One, as that motion was filed a month after the Superseding Indictment was returned. Given these facts, the government concludes that its "ability to threaten, and then carry out the threat, of greater charges unless a defendant pleads guilty," is not vindictive and does not even give rise to a presumption of vindictiveness which the government must rebut. [Doc. 25 at 2.]

C.  Motion to Preclude Expert Testimony

On August 18, 2016, the defendant filed a Motion to Preclude Expert Testimony, arguing that the subject matter of this case falls within the understanding of the average juror and, relatedly, expert testimony would be more prejudicial to him than it would be probative of his guilt. [Doc. 18 at 2.] The defendant also argues that expert testimony from a law enforcement officer about how drug trafficking organizations operate is not reliable because it would be based on subjective opinions.[2]

The government concedes that expert testimony must be both relevant and reliable, but claims that those standards are easily met here. Specifically, the government argues that the proposed expert testimony meets the requirements of Federal Rules of Evidence 401, 403, and 702, because it will address an issue beyond the common knowledge of the average layperson; the testimony will be presented by a witness having sufficient expertise; and the opinions will be based on the witness's expertise and knowledge of the operation of drug trafficking organizations. [Doc. 23 at 2.]

## **DISCUSSION**

A.  Motion to Dismiss Count One

An indictment "must be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. Pro. 7(c)(1). "An indictment is sufficient if it: (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (internal quotation marks omitted); *see also United*

---

[2] This motion was filed in anticipation of the government filing a Notice of their intent to use an expert witness. The government has since filed that Notice. [Doc.19.] As such, the Court will not address the defendant's argument that the government has not disclosed a summary of the proposed expert's opinions and bases for the opinions. However, as discussed below, it is not clear if the defendant objects to all three areas of proposed expert testimony, or only the testimony about how drug trafficking organizations operate.

- 4 -

*States v. Rodriguez*, 360 F.3d 949, 958 (9th Cir. 2004) ("Generally, an indictment is sufficient if it sets forth the elements of the charged offense so as to ensure the right of the defendant not to be placed in double jeopardy and to be informed of the offense charged.").

With respect to a conspiracy charge under 21 U.S.C. 846, an indictment "'is sufficient if it alleges: a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege or prove any specific overt act in furtherance of the conspiracy.'" *United States v. Forrester*, 616 F.3d 929, 940 (9th Cir. 2010) (*quoting United States v. Tavelman*, 650 F.2d 1133, 1137 (9th Cir. 1981); *see also United States v. Shabani*, 513 U.S. 10, 15 (1994) (government need not allege or prove the commission of any overt act in furtherance of a conspiracy charged under 21 U.S.C. 846). And "although an indictment cannot be completely open-ended, an indictment that specifies an end date is sufficient to apprise defendants of the charges and enable them to prepare a defense." *Forrester*, 616 F.3d at 940-941 (internal citation omitted).

These basic and longstanding legal principles regarding the sufficiency of an indictment charging a violation of 21 U.S.C. § 846 easily foreclose almost all of the defendant's arguments concerning the sufficiency of Count One in the case at hand. Contrary to the defendant's contention, Count One is not completely open-ended as it alleges the end date of May 15, 2016, the date of the defendant's arrest. Moreover, although Count One does not contain allegations of overt acts, the law does not require the government to allege overt acts in a conspiracy charged under 21 U.S.C. § 846. *Shabani*, 513 U.S. at 15. Thus, Count One of the Superseding Indictment seems to allege all that is required for sufficiency purposes: a conspiracy to distribute drugs, the drug involved, the time frame during which the conspiracy was operative, and the statute allegedly violated.[3]

---

[3] The failure to allege a specific amount of marijuana involved in the conspiracy impacts the statutory maximum penalty for this offense (5 years), but not the sufficiency of Count One which alleges a distributable amount of marijuana.

1   However, the one argument that gives the Court pause is that Count One fails to name
2   specific co-conspirators, but rather, generally alleges that the defendant conspired "with
3   persons known and unknown to the grand jury." [Doc. 14.] The government argues that
4   *Forrester* is on all fours with the instant case because the language of the indictment in that
5   case is similar to Count One. That is true with respect to the indictment in *Forrester* merely
6   tracking the language of 21 U.S.C. § 846, and providing an end date and geographic location
7   of the conspiracy. However, in *Forrester* the conspiracy count set forth 18 defendants who
8   were alleged co-conspirators, and did not solely allege that a single defendant conspired with
9   "others known and unknown."

10   The Ninth Circuit has not addressed, at least in a published opinion, whether an
11   indictment charging a violation of 21 U.S.C. § 846 which alleges that a single defendant
12   conspired with "others known and unknown" is sufficient to fairly inform a defendant of the
13   charge against him which he must defend. In *United States v. James*, a District Court (within
14   the Ninth Circuit) held that "[w]hile the indictment does not specifically identify [the
15   defendant's] alleged co-conspirators, the words 'together and with others both known and
16   unknown to the Grand Jury' are sufficient." 2015 WL 7274041, at * 3 (D. Montana 2015).
17   In reaching that conclusion, the district court merely cited to *United States v. Thomas*, 348
18   F.3d 78 (5th Cir. 2003) and *United States v. Huggans*, 650 F.3d 1210 (8th Cir. 2011).[4]

19   In *Huggans*, the defendant argued that the conspiracy count, which charged him with
20   conspiring with "other persons known and unknown to the grand jury" was insufficient
21   because "it failed to specify the persons with whom, and the locations and times at which,
22   he conspired to possess and distribute cocaine during the seven-year period between 2000
23   and 2007." 650 F.3d at 1216-1218. The Eighth Circuit rejected that argument because the

---

[4] Both the recency of *Jones* and its citation to Circuit Courts outside of the Ninth Circuit give this Court reassurance that the Ninth Circuit has not yet addressed the precise issue.

- 6 -

indictment "limited the time frame of the alleged drug conspiracy. . . and specified that the drug involved was cocaine." *Id.* at 1218.

In *Thomas*, the defendant argued that the conspiracy count was insufficient because it failed to "identify a co-conspirator by name *or by including the words 'and others known and unknown to the grand jury*.'" 348 F.3d at 82 (emphasis added). The Fifth Circuit held that the indictment still was "sufficient because the involvement of another person acting in concert with [the defendant] is implicit in the use of the words 'combine, conspire, and confederate.'" *Id.* at 84.[5] The court based its conclusion on the "implicit existence of the unknown co-conspirator" and "the evidence presented at trial amply establishe[d] that the defendant conspired with [a conspirator known at trial] to deliver and attempt to sell crack cocaine. . . " *Id.*

Likewise, in *United States v. Yeomans*, the Ninth Circuit, in an unpublished decision, rejected a sufficiency challenge to a conspiracy count which alleged "known and unknown co-conspirators," because "although the known co-conspirators [were] not specifically named, [the defendant] knew the names of all of the witnesses and the substance of their testimony." 1992 WL 212329, at * 1 (9th Cir. 1992). The court reasoned that the indictment was not impermissibly vague because it "sets out the purpose of the conspiracy, cites the statutes allegedly violated, gives the location and approximate dates of the conspiratorial activities, and states that [the defendant] conspired with co-conspirators known and unknown."

The case at hand is unlike *Thomas* and *Yeomans* in that it is unlikely that the evidence at trial will either reveal the existence of a known co-conspirator or establish that the defendant conspired with a known conspirator. That is because no one else was arrested and,

---

[5] *Thomas* clearly supports the government's argument that Count One is sufficient because the Fifth Circuit still found that indictment sufficient even though the indictment did not allege, as Count One does, that the defendant conspired with "others known and unknown."

- 7 -

1 according to the complaint, no drugs were found. But that evidentiary analysis would require
2 the Court to look beyond the four corners of the indictment, which this Court cannot do when
3 deciding a motion to dismiss an indictment based on sufficiency of the allegations. *See*
4 *United States v. Boren*, 278 F.3d 911 (9th Cir. 2002) ("In ruling on a pre-trial motion to
5 dismiss an indictment for failure to state an offense, the district court is bound by the four
6 corners of the indictment."); *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)
7 (defendant cannot "challenge an indictment, sufficient on its face, on the ground that the
8 allegations are not supported by adequate evidence.").[6]

9 That said, courts have found that an indictment was insufficient, on its face, where it
10 merely alleges that a defendant conspired "with persons known and unknown to the grand
11 jury." However, in those cases the indictments suffered defects beyond failing to allege
12 specific co-conspirators, which are not present in Count One of the Indictment in the case at
13 hand.

14 For instance, in *United States v. Clarine*, the Ninth Circuit, again in an unpublished
15 decision, held that the conspiracy count was insufficient when it "left an open conspiracy
16 ring" when it named "other persons known and unknown to the Grand Jury." 2005 WL
17 1620499, at *2 (9th Cir. 2005). However, that decision was also based on the fact that the
18 indictment also failed to allege a specific end date of the conspiracy or limit its geographic
19 scope, *id.* at *1-2, which is certainly not the case here.

20 Similarly, in *United States v. Cecil*, 608 F.2d 1294, 1296-1297 (9th Cir. 1979), a case
21 relied upon by the defendant, the Ninth Circuit held that the conspiracy counts of an
22 indictment charging 21 U.S.C. § 846 were insufficient because "[a]side from tracking the
23 language of the pertinent statutes in setting out the elements of the offenses," the indictment
24 failed to place the conspiracies within any time frame (*i.e.,* it was open-ended) and failed "to

---

[6] In fact, a court must accept the allegations in the indictment as true when assessing whether the indictment sufficiently alleges an offense. *Boren*, 278 F.3d at 914. "The indictment either states an offense or it doesn't." *Id.*

state any other facts or circumstances pertaining to the conspiracy or any overt acts done in furtherance thereof." The Supreme Court in *Shabani* later made clear that an indictment charging a violation of 21 U.S.C. § 846 need not allege the commission of any overt act. *Shabani*, 513 U.S. at 15.

However, in *United States v. Cooper*, a District Court in the Northern District of California found that "*Cecil* is still binding [9th Circuit] authority to the extent that it requires that 'an indictment [for violation of 21 U.S.C. § 846] must contain a few basic factual allegations [to] accord[] defendants adequate notice of the charges against them and assure[] them that their prosecution will proceed on the basis of facts presented to the grand jury.'" In *Cooper*, the district court held that the indictment was insufficient when it alleged that the defendant conspired with "other persons known and unknown" even though the indictment tracked the statutory language of 21 U.S.C. § 846. The court reasoned that although the conspiracy count did not need to allege overt acts, it failed to "provide sufficient detail regarding when the alleged conspiracy took place, or any detail at all regarding who the alleged co-conspirators were or any facts regarding what they were alleged to have done."

In addition to *Cooper* not being binding authority on this Court, that case seems to be an outlier in requiring the government to do more than track the language of 21 U.S.C. § 846, set out the purpose of the conspiracy, cite the statutes allegedly violated, give the location and approximate dates of the conspiratorial activities, and state that the defendant conspired with co-conspirators known and unknown to the grand jury. The Court says that because, as discussed above, no other case has held that the failure to specifically identify co-conspirators renders a conspiracy count insufficient, provided that the indictment is also not open-ended as to the time frame of the conspiracy and its geographic location.

As mentioned earlier, in deciding a motion to dismiss based on the sufficiency of the allegations in the indictment, a court can only consider evidence appearing on the face of the indictment and not whether the allegations are true or supported by adequate evidence. *Boren*, 278 F.3d at 914; *Jensen*, 93 F.3d at 669. Count One of the Superseding Indictment

alleges an end date of the conspiracy, the drug involved, the statutes violated, the precise location where the conspiracy took place, and that other persons known and unknown were involved in the conspiracy. While the absence of any specific alleged co-conspirators may prove a problem for the government at trial, the failure to allege specific co-conspirators in the indictment does not make the conspiracy count insufficient for purposes of a motion to dismiss. Accordingly, the Court recommends that the District Court deny the motion to dismiss on this ground.

B.  <u>Motion to Dismiss the Indictment for Vindictive Prosecution</u>

"The Supreme Court has held that the Due Process Clause prohibits the prosecution of more serious charges or the imposition of a harsher sentence against a defendant merely because the defendant has exercised" a constitutional or statutory right. *United States v. Garza-Juarez*, 992 F.2d 896, 905 (9th Cir. 1993). As such, "[a] prosecutor violates due process when [s/he] seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right." *United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000). This due process violation is commonly referred to as "prosecutorial vindictiveness."

A defendant "may establish prosecutorial vindictiveness by producing direct evidence of the prosecutor's punitive motivation towards [him/her]." *United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir, 2007). That is difficult to prove, and it is not the allegation made in the instant matter. Alternatively, a defendant "is entitled to a presumption of vindictiveness" if the defendant can show that additional charges were brought because the defendant exercised a constitutional or statutory right "in circumstances that give rise to an appearance of vindictiveness." *Jenkins*, 504 F.3d at 699. "Once a presumption of vindictiveness has arisen, 'the burden shifts to the prosecution to show that any increase in the severity of the charges did not stem from a vindictive motive, or was justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness.'" *Garza-Juarez*, 992 F. 2d at 906 *(quoting United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982)).

- 10 -

1  However, vindictiveness claims are "evaluated differently when the additional charges
2  are added during pretrial proceedings, particularly when plea negotiations are ongoing, than
3  when they are added during or after trial." *Gamez-Orduno*, 235 F.3d at 462; *see United*
4  *States v. Goodwin*, 457 U.S. 368, 380-381 (1982). To be clear, "prosecutorial conduct that
5  would not have occurred but for hostility or a punitive animus towards the defendant because
6  he has exercised his specific legal rights violates due process in the pretrial setting as it does
7  at other stages." *Gamez-Orduno*, 235 F.3d at 462. But "in the context of pretrial plea
8  negotiations vindictiveness will not be presumed simply from the fact that a more severe
9  charge followed on, or even resulted from, the defendant's exercise of a right." *Id.*

10  Vindictiveness is not presumed in the pretrial plea bargaining setting because courts
11  sanction "plea negotiations as a means of resolving criminal cases." *Id.* The Supreme Court
12  in *Goodwin* "recognized that prosecutors will often, as a plea negotiation tactic, threaten
13  increased charges during the course of plea negotiations, and later, if no guilty plea is
14  forthcoming, make good on that threat." *Id.* at 463. The Court reasoned that such
15  prosecutorial conduct is not meaningfully distinguishable from charging the more serious
16  offense at the outset and then reducing the charges as a result of plea negotiations. *Id.* As
17  such, the "courts have concluded that threatening and then filing more severe charges as an
18  outgrowth of plea negotiations does not violate due process." *Id.*

19  Here, the prosecutor's actions in seeking a Superseding Indictment adding the charge
20  of Illegal Re-entry of a Removed Alien in violation of 8 U.S.C. § 1326, took place in the
21  pretrial setting.[7] There has been no claim or suggestion that the prosecutor threatened to add

---

[7] As mentioned earlier, the Superseding Indictment returned by the grand jury on July 20, 2016, was sought well before the defendant filed his Motion to Dismiss Count One on August 18, 2016. Thus, the Superseding Indictment was not retribution for or a product of the defendant's arguable assertion of a constitutional or statutory right (*i.e.*, the right to challenge the sufficiency of Count One). *See Garza-Juarez*, 992 F.2d at 906 (following through of threat to withdraw plea offer and seek additional charges if the defendant proceeded with his pretrial motion to dismiss for outrageous government conduct gave rise to a presumption of vindictiveness, but government successfully rebutted that presumption).

1  an additional charge if the defendant did not plead guilty (either with or without a plea
2  agreement). However, even if the prosecutor had threatened to add the Illegal Re-entry of
3  a Removed Alien charge if no guilty plea on the drug conspiracy offense was forthcoming,
4  he was free to "make good on that threat." *Gamez-Orduno*, 235 F.3d at 463; *see*
5  *Bordenkircher v. Hayes*, 434 U.S. 357 (1978) (due process clause does not prohibit
6  prosecutor from following through on threat to bring additional charges against a defendant
7  who refuses to plead guilty).[8] Such prosecutorial conduct is not meaningfully distinguishable
8  from charging the Illegal Re-entry offense at the outset and then dismissing that charge as
9  a result of plea negotiations.

10  The defendant argues that when the Superseding Indictment was returned on July 20,
11  2016, plea negotiations were long completed because he had rejected the government's plea
12  offer on June 27, 2016, and advised the government that he planned to go to trial. (9/21/16
13  Tr. at 5.) However, the Ninth Circuit has rejected the argument that a "more lenient rule" for
14  the presumption of vindictiveness should apply "when enhanced charges do not arise from
15  the context of explicit plea negotiations." *United States v. Kent*, 649 F.3d 906, 913 (9th Cir.
16  2011). That court noted that "[a]lthough enhanced charges will often accompany failed plea
17  negotiations, prosecutors may add charges pretrial for any number of permissible reasons,
18  such as coming to a new understanding of the crime or evidence." *Kent*, 649 F.3d at 913.

---

[8] The maximum penalty for the Illegal Re-entry offense is two years and the maximum penalty for the drug conspiracy count is five years. Thus, the government has not added a more serious charge, which seems to be required to support a claim of prosecutorial vindictiveness. Neither party raised this issue in their pleadings and the Court only honed in on the maximum penalties for the charged offenses during oral argument. (9/21/16 Tr. at 10, 21.) The fact that the additional charge is not more serious than the drug conspiracy offense may, in and of itself, be fatal to the defendant's motion to dismiss for vindictiveness. However, because the government did not raise this issue, the Court will not deny the defendant's motion on that basis.

1          Here, even if the Court were to conclude that plea negotiations had ended, the
2   additional charge was added for permissible evidentiary reasons.  The addition of the Illegal
3   Re-entry charge likely ensures (absent a severance of the counts) that the jury will know that
4   the defendant is undocumented, he has been previously deported, and he is well aware that
5   he cannot legally enter the United States.  That evidence – especially the defendant's lack of
6   legal status to be in the United States – is arguably relevant to the alleged drug conspiracy
7   in terms of the government's theory for how drug smuggling organizations that utilize
8   "backpackers" operate.   Specifically, that drug organizations utilize undocumented
9   individuals like the defendant to both carry marijuana through the desert and scout for law
10  enforcement; that these undocumented folks get involved in the drug conspiracy so they can
11  illegally enter and work in the United States without paying a smuggling fee (or the full fee);
12  and/or that these folks are paid a minimal amount of money (at least by U.S. standards) for
13  the strenuous "work" that they do precisely because they have no legal ability to enter and
14  work in the United States and are impoverished in Mexico.  If the government did not add
15  the Illegal Re-entry offense, it is less likely that  evidence of the defendant's immigration
16  status (and prior deportation) would be admissible at trial on the drug conspiracy charge.
17  Without that evidence, the government could not make the arguments detailed above about
18  how backpacking smuggling organizations operate, including who they employ.  Thus,
19  assuming *arguendo* that the addition of this charge did not stem explicitly from failed plea
20  negotiations, this charge was added for permissible evidentiary reasons, not vindictiveness.

21          Finally, the defendant's contention that plea negotiations had ended ignores the reality
22  of plea bargaining, which is that negotiations never truly end until the day of trial (and
23  sometimes continue after the trial has begun).  *See e.g., id.* at 913-914 (defendant offers no
24  authority for the untenable proposition that an attorney who does not respond to a plea offer
25  has unilaterally opted out of negotiations).  Indeed, the addition of the Illegal Re-entry of a
26  Removed Alien charge renewed plea negotiations (at least in theory) because the defendant
27  had another offense (which is rarely defensible) to use in negotiating a guilty plea.  While
28

defense counsel thought the prosecutor's plea offer on the conspiracy offense was essentially a "take it or leave it" or "like it or lump it" offer, counsel acknowledged that he never proposed a guilty plea to the Illegal Re-entry charge. (9/21/16 Tr. at 7.)

Based on all of these facts, this Court concludes that the addition of the Illegal Re-entry charge, either during pretrial plea negotiations or as an outgrowth of failed plea negotiations, does not establish vindictiveness or a presumption of vindictiveness which the government must rebut. As such, the Court recommends that the District Court deny the Motion to Dismiss the Indictment for Vindictiveness.

C.    Motion to Preclude Expert Testimony

"Expert testimony on drug trafficking organizations . . . is admissible when relevant, probative of a defendant's knowledge, and not unfairly prejudicial under the standard set forth in the Federal Rules of Evidence." *United States v. Sepulveda-Barraza*, 645 F.3d 1066, 1072 (9th Cir. 2011). Under Federal Rule of Evidence 702, the government also has to demonstrate that the proposed expert witness is qualified (based on training and experience) to render an opinion, that the proposed testimony is reliable, and that the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." The admissibility of expert testimony on drug trafficking organizations is made on a "case-by-case" basis. *Sepulveda-Barraza*, 645 F.3d at 1070, 1072. The admissibility of this testimony – in terms of its relevance and prejudicial effect – often turns on the specific criminal charge(s) and the nature of the proposed testimony.[9]

For instance, if a defendant is not charged with a conspiracy to import or distribute drugs, it is less likely that expert testimony on drug trafficking organizations will be admissible. *See United States v. Pineda-Torres*, 287 F.3d 860 (9th Cir. 2002); *United States v. Varela-Rivera*, 279 F.3d 1174 (9th Cir. 2002); *United States v. Vallejo*, 237 F.3d 1008 (9th

---

[9] With respect to expert testimony on drug trafficking organizations, the law enforcement officer's qualification to provide that testimony is rarely an issue.

- 14 -

Cir. 2001); *United States v. McGowan*, 274 F.3d 1251 (9th Cir. 2001). That said, expert testimony on drug organizations was found to be proper even though the defendant was not charged in a conspiracy. *See Sepulveda-Barraza*, 645 F.3d at 1072; *United States v. Murillo*, 255 F.3d 1169 (9th Cir. 2001). Thus, the charge alone is not dispositive on the admissibility of this expert testimony.

The admissibility of expert testimony on drug organizations comes up most frequently in cases involving unknowing couriers of drugs. In those cases, the concern expressed by the Ninth Circuit regarding the admissibility of expert testimony about how drug organizations operate is the implication that the defendant has "knowledge of how the entire organization operated, and thus knew he was carrying the drugs." *Vallejo*, 237 F.3d at 1017; *see also Pineda-Torres*, 287 F.3d at 864 ("[T]he implication of the expert testimony . . . was plainly that the defendant was a member of an international drug organization and had knowledge that drugs were in the car."). Relatedly, the expert testimony "'unfairly impute[s] specific knowledge to'" the defendant in cases where "'knowledge [is] the central question before the jury.'" *Pineda-Torres*, 287 F.3d at 864 (*quoting Vallejo*, 237 F.3d at 1016.)

Notwithstanding the concerns detailed above, the Ninth Circuit has allowed "government agents or similar persons [to] testify as to the general practices of criminals to establish the defendant['s] modus operandi." *Vallejo*, 237 F.3d at 1016 (*quoting United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir. 1984). Indeed, this testimony helps the trier of fact to understand how "combinations of seemingly innocuous events may indicate criminal behavior." *Id.*; *see United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995). Likewise, the Ninth Circuit has "allowed testimony about how criminal narcotics distribution organizations operate to help the jury understand a complex" drug distribution scheme involving many "members of a structured criminal enterprise." *Id.*; *see United States v. Patterson*, 819 F.2d 1495, 1507 (9th Cir. 1987); *United States v. Cordoba*, 104 F.3d 225, 230 (9th Cir. 1997). As discussed below, the proposed expert testimony here is offered for precisely these reasons.

The defendant is charged with a conspiracy to distribute marijuana. Although the precise nature and scope of the conspiracy is not detailed in the indictment, the parties agree that the defendant's alleged role in the conspiracy was to scout for law enforcement and alert marijuana backpackers of the presence and/or location of law enforcement. While the defendant's role in the conspiracy seems (and likely is) minimal, the instant conspiracy is a "structured criminal enterprise" that involves many potential participants: the suppliers of the marijuana in Mexico, including the individuals who grow, package and transport the marijuana to near the border; the individuals who will backpack the drugs into the United States; the person(s) who recruit(s) the backpackers; the individuals who meet the backpackers in vehicles and transport the drugs further into the United States; the individuals who take final possession of the bulk marijuana and distribute it; the scouts who are positioned on mountains or hilltops to look for backpackers; the person(s) who recruit(s) the scouts; and the individuals who both obtain and transport the supplies for the scouts (*e.g.*, binoculars, radios, phones, batteries, solar panels, and food and water). Based on the government's representation of how this conspiracy operates, it is fair to say that this conspiracy is far more complex and requires much more coordination among its participants, than when a drug courier is tasked with crossing the border with drugs and delivering them to another member of a drug organization.

There is no doubt that expert testimony would aid the jury in understanding how this complex marijuana backpacking conspiracy operates and, more importantly, the role of a scout in the conspiracy. In this Court's experience, the expert witness would not testify or imply that a scout like the defendant knows how the entire drug organization operated; rather, the testimony would focus on the specific role that a scout plays in the larger conspiracy.[10]

---

[10] Under Federal Rule of Evidence 704, experts are allowed to give their opinions regarding the ultimate factual issues. "A limited exception to this general rule exists in criminal cases in that expert witnesses may not testify as to the mental state of a defendant . . . when the mental state constitutes an element of the crime charged." *Murillo*, 255 F.3d at 1178. The government has not suggested that an expert witness would testify about the

- 16 -


...


Indeed, in a case such as this where no drugs were found and no backpackers were arrested, this testimony helps establish the modus operandi of both a scout specifically and the drug backpacking organization generally; it would also help the trier of fact understand how seemingly innocuous facts – *i.e.*, agents found a guy camping on a hilltop in Southern Arizona – may indicate criminal behavior. Obviously, the proposed testimony is prejudicial to the defendant, but that is the case with all testimony and evidence presented by the government in a criminal case. However, this Court cannot conclude that the prejudice substantially outweighs the probative value of this evidence as is required under Federal Rule of Evidence 403.

The defendant also objects to the reliability of the proposed expert testimony under Federal Rule of Evidence 702. Because the government's Notice of Experts was filed after the Motion to Preclude Expert Testimony, it is not clear if the defendant is also objecting to the qualifications of the proposed expert witnesses.[11] Based on *curricum vitaes* filed with the Notice of Experts, it appears that the proposed witnesses are well-qualified to provide opinion testimony in their respective subject areas. However, any objection to the qualifications of the proposed witnesses, as well as the objection about the reliability of their proposed testimony (based both on those qualifications and the evidence likely to be presented at trial) are foundational evidentiary matters which are best addressed during a voir dire of the proposed expert witness, either prior to or during trial. That will allow the

---

defendant's mental state.

[11] The government seeks to introduce expert testimony on three subject areas: (1) a fingerprint expert who will testify about the defendant's fingerprints on certain items found near the defendant's arrest; (2) a law enforcement officer who will testify about how drug smuggling organizations operate; and (3) a technology officer with U.S. Customs and Border Protection who will testify about the procurement and operation of handheld radio and other equipment. At oral argument, the Court neglected to ask defense counsel if he was objecting to all three areas of proposed expert witness testimony. Based on the argument by counsel, it appears the defendant is primarily concerned about the testimony related to the operation of drug smuggling organizations.

- 17 -

government to more fully detail the precise testimony and opinions of the proposed experts so there is no danger that these witnesses will opine on the defendant's mental state or that the defendant knew of all the details of the drug smuggling operation. Relatedly, it will enable the District Court to assess the expert's qualifications, training, experience, and knowledge which form the bases for the proposed testimony and the opinions, as well as the reliability of the testimony and opinions that the government seeks to present to the jury.

For the reasons stated above, the Court recommends that the District Court deny the Motion to Preclude Expert Testimony based on the arguments that this testimony is not relevant and that the prejudice which would result from this testimony substantially outweighs the probative value of the testimony. The government will have to demonstrate the qualifications of the proposed expert witnesses and the reliability of their testimony either prior to trial or during trial outside the presence of the jury.

## **CONCLUSION**

For the reasons detailed above, this Court recommends that the District Court deny the Motion to Dismiss Count One, the Motion to Dismiss for Vindictive Prosecution, and the Motion to Preclude Expert Testimony (provided the government subsequently establishes the qualifications of the expert witnesses and the reliability of their testimony).

Pursuant to 28 U.S.C. §636(b)(1)(B), the parties have fourteen (14) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court. Any objections and Responses to objections filed should be filed as CR 16-01137-TUC-JAS. No Replies shall be filed unless leave is granted from the District Court.

DATED this 4th day of October, 2016.

_____
Eric J. Markovich
United States Magistrate Judge